UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ETRAILER CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:17-CV-01284-AGF |
| | ) |
| ONYX ENTERPRISES, INT'L CORP. d/b/a CARiD.COM, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This copyright and unfair competition matter is before the Court on the motion of Defendant Onyx Enterprises, International Corporation ("Onyx"), to dismiss Plaintiff etrailer Corporation's ("etrailer") complaint. For the reasons set forth below, the motion to dismiss will be denied in part as to etrailer's copyright claims, and granted as to etrailer's unfair competition claims.

## BACKGROUND

Etrailer is an online vendor of motor vehicle accessories such as trailer hitches, trailer parts, and towing accessories. Etrailer uses its own high-quality photographs ("Photos") and videos to advertise and market the products it sells. Onyx, which does business on the Internet as CARiD.com, is a direct competitor of etrailer in the online car accessories sales market. Etrailer and Onyx sell many of the same products made by third parties.

Etrailer's complaint states that its Photos and videos either have copyright registrations approved by the United States Copyright Office ("actual registrations"), or are the subject of pending, completed copyright registration applications filed with the Copyright Office ("applied-for registrations"). Etrailer claims that Onyx engaged in willful copyright infringement in violation of the federal Copyright Act, 17 U.S.C. § 501, by illegally copying and displaying thousands of etrailer's Photos on CARiD.com to sell the products depicted in the photos (Count I).

Etrailer additionally alleges that Onyx altered some of the Photos by removing etrailer's name or marks that originally appeared in the Photos on or near the products depicted. Etrailer claims that this constituted false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II), and Missouri statutory and common law (Count III).

For the copyright infringement claims, etrailer seeks an entry of judgment finding that Onyx has infringed on etrailer's rights; an order directing Onyx to provide proof of destruction of unlawful copies of the Photos, or to allow etrailer to effect the same; a permanent injunction against Onyx; monetary damages, pursuant to 17 U.S.C. § 504(c), of $150,000 per infringement, or disgorgement of Onyx's profits in an amount to be proven at trial; and costs and attorney's fees.

For the false designation of origin claims, etrailer seeks an entry of judgment; reimbursement for advertising and other expenses necessary to dispel the public confusion caused by Onyx's unlawful acts; monetary damages in an amount to be proven at trial,

trebled, pursuant to 15 U.S.C. § 1117, on account of Onyx's willfulness; and attorney's fees and costs.

To support its claims, etrailer attached to the complaint an exemplar list of 27 of its actually registered "photo groups," which contain Photos of vehicle accessories.  Also attached are side-by-side comparisons of 80 Photos, as posted on etrailer.com, and Onyx's posting of the identical, or slightly modified, Photos on CARiD.com or eBay.com.  Of the 80 Photos included, 69 have actual registrations, and 11 are listed as "pending registration."  In 21 of the Photos, the name "etrailer" appears on the product itself; etrailer's name has been removed in the allegedly infringing versions.

## ARGUMENTS OF THE PARTIES

In support of its motion to dismiss the federal copyright claims, Onyx initially argued that the court lacked subject matter jurisdiction over claims based on Photos with only applied-for registrations.[1]  Onyx additionally asserts that etrailer failed to state a claim with regards to false designation of origin under either federal or state law, as etrailer is not the source of the products depicted in the Photos, and thus removing etrailer's marks from the Photos does not falsely designate the products' origin.

In opposing Onyx's motion to dismiss, etrailer notes that Onyx's position on the Court's lack of subject matter jurisdiction relied on an incorrect statement of the law.

---

[1] As Onyx had already filed an answer when this motion was filed, this motion is more accurately regarded as a motion for judgment on the pleadings.  *See, e.g., Free & Fair Election Fund v. Mo. Ethics Comm'n*, No. 16-04332-CV-C-ODS, 2017 WL 2189657, at *3 (W.D. Mo. May 17, 2017).  The same standard that governs motions to dismiss also governs motions for judgment on the pleadings.  *Ellis v. City of Minneapolis*, No. 16-2019, 2017 WL 2735423, at *3 (8th Cir. June 27, 2017).  For convenience, the Court will refer herein to the motion as one to dismiss.

3

Etrailer cites *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010), which held that registration of a copyright is not a jurisdictional issue, but rather a "precondition" to suit under the Copyright Act. With respect to Counts II and III, etrailer first asserts that there is no support in the complaint for Onyx's argument that etrailer is not the origin of the underlying products depicted. Etrailer further argues that its protectable interest in the Photos is not dependent on etrailer being the source of the products depicted, and cites cases to support the proposition that a defendant's use of a plaintiff's photographs in advertising certain products is a false designation of origin. In addition, etrailer argues that the Photos themselves are the products being falsely designated, and Onyx's removal of etrailer's marks "from many of the [Photos]" is likely to cause confusion regarding the Photos' origin. ECF No. 18 at 7.

In reply, Onyx concedes that the Court has subject matter jurisdiction over the infringement claims, but argues that Count I fails to state a claim based on any Photos for which etrailer did not obtain actual registration. Regarding Counts II and III, Onyx points to numerous references in the complaint to etrailer's status as a vendor, and not the manufacturer or producer, of the products etrailer sells. Onyx distinguishes the cases etrailer relies on, as those cases involved photographs of products that were, in fact, the plaintiff's own goods. Onyx also asserts that the Photos cannot be "products" within the definition of the Lanham Act or Missouri law on false designation, as the Photos are not marketed to consumers.

By means of a sur-reply, filed with leave of Court, etrailer posits that Onyx waived its opportunity to move to dismiss Count I for failure to state a claim by initially attacking

that count on subject matter jurisdiction grounds. Etrailer further argues that it has satisfied any precondition to suit for infringement of Photos with either actual registration or applied-for registration, based on *Action Tapes, Inc. v. Mattson*, 462 F.3d 1010 (8th Cir. 2006), which stated that infringement is actionable under the Copyright Act once the owner has "delivered the deposit, application, and fee required for registration to the United States Copyright Office." *Id.* at 1013.

## DISCUSSION

To survive a motion to dismiss for failure to state a claim, a pleader's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court is not required to accept the legal conclusions the pleader draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). However, the Court must assume the factual allegations of a complaint as true and construed in favor of the plaintiff "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly,* 550 U.S. at 556.

### Count I: Federal Copyright Infringement

A copyright in a work "subsists from its creation." 17 U.S.C. § 302. "Registration" with the Copyright Office is optional, but is required to entitle a copyright holder to bring an infringement action under the Copyright Act, and copyright holders "frequently register specifically for the purpose of being able to bring suit" under the Act.

5

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 619 (9th Cir. 2010).   This precondition to suit is stated in 17 U.S.C. § 411(a), as follows: "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  *See Reed Elsevier, Inc.*, 559 U.S. at 157-58.

The Copyright Act defines an infringer as "anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122."   17 U.S.C. § 501(a).   Exclusive rights in copyrighted works include the rights, per 17 U.S.C. § 106: "(1) to reproduce the copyrighted work in copies . . . ; [and] (2) to prepare derivative works based upon the copyrighted work . . . ."  *Id*. at § 106.   To establish copyright infringement, a plaintiff must demonstrate that (1) it owns a valid copyright, and (2) that the defendant copied, displayed, or distributed protected elements of the copyrighted work without authorization.   *Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898, 904 (E.D. Mo. 2015) (citing *Mulchay v. Cheetah Learning LLC*, 386 F.3d 849, 852 (8th Cir. 2004)).

The Court first concludes that, procedurally, Onyx has not waived its opportunity to argue for dismissal of etrailer's copyright infringement claim for failure to state a claim. While a reply memorandum in support of a motion to dismiss should generally not raise a new argument for dismissal, courts may consider such an argument where, as here, the nonmoving party has been given leave to file a surreply to address the new argument, and did so.  *See, e.g., N. Ala. Fabricating Co. v. Bedeschi Mid-West Conveyor Co.*, No.

16-2740-DDC-TJJ, 2017 WL 1836973, at *6 (D. Kan. May 8, 2017); *Prosser v. Nagaldinne*, No. 4:09CV2117 HEA, 2011 WL 250999, at *1 (E.D. Mo. Jan. 26, 2011).

As noted above, most of etrailer's exemplar Photos are parts of actually registered photo groups, and thus meet the § 411(a) precondition to sue. With respect to etrailer's remaining copyright infringement claims, there is currently a split among the federal circuit courts on whether applied-for registration satisfies the precondition for an infringement claim under the Copyright Act. Some courts have adopted the "application" approach – allowing an infringement suit after filing a complete copyright application with the Copyright Office – while other courts have adopted the "registration" approach – requiring a complete application *and* either approval or rejection from the Copyright Office. *Compare, e.g., Cosmetic Ideas*, *Inc.*, 606 F.3d at 619 (concluding that the application approach better fulfills Congress's purpose), *with, e.g., La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1205 (10th Cir. 2005) (concluding that "registration" as used in § 411(a) does not occur until the Copyright Office takes action on an application).

In *Action Tapes, Inc.*, 462 F.3d at 1013, the Eighth Circuit stated, as noted above, that "[a] copyright owner may not sue for infringement under the federal Copyright Act until the owner has delivered 'the deposit, application, and fee required for registration' to the United States Copyright Office."[2]  Even if this statement in *Action Tapes* is just dicta,

---

[2]  The Court notes that a split on this question also exists within the Minnesota District Court. *Compare Tri-Marketing, Inc. v. Mainstream Marketing Servs., Inc.*, No. CUV 09-13DWFRLE, 2009 WL 1408741 at *3 (D. Minn. May 19, 2009) (adopting the application approach in denying a motion to dismiss), *with Asche & Spencer Music, Inc. v.

7

the Court believes this approach is the better-reasoned one. As the Ninth Circuit explained in *Cosmetic Ideas, Inc.*, 606 F.3d at 619-21, the application approach avoids unnecessary delays in infringement litigation based on the Copyright Office's processing an application, delays that may combine with the Copyright Act's three-year statute of limitations to prevent a copyright holder from ever bringing suit. Further, the application approach is consistent with 17 U.S.C. § 410(d)'s mandate that an application's effective registration date is the day a completed application is received, not approved. *Id*. at 620. And this approach "better fulfills Congress's purpose of providing broad copyright protection while maintaining a robust federal register." *Id.* at 619.

Of course, at a later stage in this litigation, etrailer will have to specify which Photos it claims were infringed and their registration status. While etrailer has not substantiated its claim that "thousands" of Photos were infringed by Onyx, such complete factual development is unnecessary to survive a motion to dismiss. *See, e.g., Joint Stock Co. Channel One Russia Worldwide v. Informir LLC*, No. 16CV1318GBDBCM, 2017 WL 696126 at *14 (S.D.N.Y. Feb. 15, 2017) (explaining that where a copyright claim includes a large number of works, an exhaustive list of copyrights allegedly infringed is not necessary to survive a motion to dismiss, and that a "representative listing" will suffice).

In sum, Onyx's motion to dismiss for failure to state a claim will be denied as to Count I.

---

*Principato-Young Entm't, Inc.*, 147 F. Supp. 3d 833, 838 (D. Minn. 2015) (applying the registration approach in granting a motion to dismiss).

8

**Counts II and III: False Designation of Origin / Unfair Competition**

The Lanham Act includes a statement of its purpose at 15 U.S.C. § 1127, which provides, in relevant part, as follows:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks . . . .

Section 1125(a), entitled "False designations of origin, false descriptions, and dilution forbidden," "create[s] a federal remedy against a person who used in commerce either 'a false designation of origin, or any false description or representation' in connection with 'any goods or services.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003). This remedy "does not have boundless application . . . for unfair trade practices," and only applies to "certain unfair trade practices." *Id*.

The most common false designation of origin claim is "palming off" – "where one competitor tries to fool the consuming public into thinking that his product is really the product of another." *Pampered Chef, Ltd. v. Magic Kitchen, Inc.*, 12 F. Supp. 2d 785, 794 (N.D. Ill. 1998). Also common is "reverse palming off" – "selling or offering for sale another's product that has been modified slightly and then labeled with a different name." *McCardle v. Mattel Inc.* 456 F. Supp 2d 769, 783 (E.D. Tex. 2006) (citation omitted).

An actionable claim requires that the infringing use be "likely to cause confusion or to cause mistake . . . as to the origin . . . of goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). The phrase "origin of goods" under the

9

Lanham Act refers to "the producer of the tangible goods that are offered for sale." *Dastar Corp.*, 539 U.S. at 37. A plaintiff must show, at least "likely . . . confusion to consumers." *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 636 F. Supp. 2d 891, 899 (E.D. Mo. 2009), *aff'd,* 613 F.3d 754 (8th Cir. 2010). As accepted by both parties, the elements of Missouri's unfair competition claims "substantially overlap with the federal . . . false designation of origin claims," and so will not be analyzed separately. *See Steak n Shake Co. v. Burger King Corp.*, 323 F. Supp. 2d 983, 991 (E.D. Mo. 2004).

Etrailer appears to be advancing two theories of recovery under the Lanham Act: first, that Onyx unlawfully doctored some of the Photos to remove etrailer's name from the products depicted in the Photos in order to "cause confusion, mistake, and deception as to the affiliation, connection, or association of the products with etrailer, or as to the sponsorship or approval of said products by etrailer," ECF Doc. 1 at 13; and second, that Onyx improperly attempted to use etrailer's Photos, "misbranded to appear as" Onyx's, ECF Doc. 18 at 7.

With respect to the doctoring claim, typically, the removal of a competitor's marks from a product is done in an attempt to "reverse palm off" an item, which occurs "when the wrongdoer simply removes or otherwise obliterates the name of the manufacturer or source and sells the product in an unbranded state." *See Smith v. Montoro*, 648 F. 2d 602, 605 (9th Cir. 1981). For example, in a case cited by etrailer, *Truck Equipment Services Co. v. Fruehauf Corp.*, 536 F.2d 1210 (8th Cir. 1976), the defendant attempted to "reverse palm off" its semi-trailer as the plaintiff's similar Cornhusker 800 semi-trailer by copying plaintiff's exterior design and using images of the Cornhusker 800 to market the

defendant's semi-trailer.  The district court found, as affirmed by the Eighth Circuit, that the defendant's imitation of the Cornhusker 800 and use of Cornhusker 800 images caused a likelihood of confusion in the marketplace, and "the unfairness of [the defendant's] conduct . . . must be seen as using the photograph of [the plaintiff's] trailer to trade upon the reputation of [the plaintiff] and to confuse potential customers as to the source of origin of the trailer pictured on the sales literature."  *Id*. at 1216.

Here, however, it does not appear that etrailer is the "origin" of the underlying products in the Photos – the motor vehicle accessories sold by both etrailer and Onyx.  As noted above, etrailer argues that Onyx has not shown sufficient support for the proposition that etrailer was not, in fact, the origin of the goods in the Photos.  The Court finds this argument disingenuous, as etrailer has not alleged in the complaint or in its briefs that it was the origin the products.  Whether sold by etrailer or Onyx, the Court understands the products to be produced by the same third-party sources.  Thus, the Court agrees with Onyx that the cases etrailer cites on the point at issue are unavailing as they all consider a plaintiff's photos of products for which the plaintiff was also the origin of the products depicted therein.[3]

Etrailer's theory that alteration of the Photos amounts to an attempt by Onyx to reverse palm off etrailer's Photos as Onyx's, in violation of the Lanham Act, also does not fare well.  *Quadratec, Inc. v. Turn 5, Inc.*, No. Civ.A. 13-6384, 2015 WL 4876314 (E.D.

---

[3]  In any event, Onyx cannot be said to falsely designate the origin of the goods it sells by removing etrailer's marks in the Photos.  Etrailer does not allege that Onyx removed etrailer's logos from the actual products Onyx sells.  Onyx's alleged doctoring of the Photos, then, does not mislead consumers as to the underlying products' origin.

11

Pa. Aug. 13, 2015), presents a remarkably similar situation to that presented here. In that case, the plaintiff alleged, *inter alia*, federal copyright infringement and false designation of origin claims based on the defendant's alleged use of the plaintiff's registered online photos and videos ("product presentations") of third-party Jeep® accessories that both the plaintiff and the defendant sold. The court denied the defendant's motion to dismiss the copyright claims, but granted dismissal of the plaintiff's Lanham Act claims, explaining as follows:

> The tangible goods at issue here are the aftermarket Jeep® products. Plaintiff attempts to circumvent the prerequisites for maintaining a claim under Section 1125(a)(1)(A) by contending that the catalog services themselves are the goods at issue. However, it is not disputed that neither Plaintiff nor Defendant is in the business of selling catalog services. Instead, they are in the business of selling aftermarket Jeep® products. There can be no confusion as to the origin of these goods, because aftermarket Jeep® products—whether sold by Plaintiff or Defendant—are manufactured by the same source. Plaintiff essentially seeks protection of its marketing of its products. However, the Lanham Act does not protect originality or creativity, nor does it create a cause of action for, in effect, plagiarism. By copying Plaintiff's Product Presentations, Defendant's rights are protected under the Copyright Act. Plaintiff's claim under Section 1125(a)(1)(A) will be dismissed.

*Id.*, 2015 WL 4876314 at *9 (internal citations omitted).

In sum, the Court finds that etrailer has failed to state a claim for false designation of origin, and will grant Oynx's motion to dismiss Counts II and III.[4]

---

[4] In its memorandum in opposition to Defendant's motion to dismiss, Plaintiff asserts that its unfair competition claims were "not merely [for] trademark infringement" or "reverse palming off." However, as Plaintiff did not point to a basis for relief other than false designation, the Court limits its analysis to that claim.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Defendant Onyx to dismiss Plaintiff's complaint is **DENIED** with respect to Count I and **GRANTED** with respect to Counts II and III.

                               _____
                               AUDREY G. FLEISSIG
                               UNITED STATES DISTRICT JUDGE

Dated this 17th day of July, 2017.